UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ANA I RAMOS,

           Plaintiff,

   v.

           Case No. 18-cv-1900-bhl

CONTINENTAL AUTOMOTIVE SYSTEMS INC,

           Defendant.

## ORDER GRANTING SUMMARY JUDGMENT

      Plaintiff Ana Ramos alleges that her former employer, Defendant Continental Automotive Systems, Inc. (Continental), discriminated against her because of her depression, anxiety, and ADHD. Ramos filed a charge of discrimination with the Wisconsin Equal Rights Division and the Equal Employment Opportunity Commission on April 30, 2018. (ECF No. 38 at 36.) On September 6, 2018, the EEOC issued Ramos a Notice of Right to Sue. (ECF No. 43 at 20.) She subsequently filed this suit. Continental has moved for summary judgment, and because no reasonable trier of fact could find for Ramos under the applicable law, that motion will be granted.

### FACTUAL BACKGROUND[1]

      Continental Automotive Systems, Inc. operates an electronics department in Delavan, Wisconsin. (ECF No. 38 at 5-6.) The electronics department is an assembly line consisting of the surface mount line, hand assembly line, Kawasaki line, final functional test area, and carb area. (*Id.* at 6.) Each of these five manufacturing lines is staffed by production associates. (*Id.*) Among the essential functions of a production associate on all five lines is the ability to "rotate through multiple tasks." (ECF No. 34-10 at 2.) The job also requires "being careful about detail and thorough in completing work tasks." (*Id.* at 4.)

      Ana Ramos began working for Continental's predecessor, Synerject, on or about July 24, 2006. (ECF No. 38 at 2.) From that time until November 2016, she primarily worked on

---

[1] These facts are drawn from the parties' proposed statements of undisputed facts (and responses). (ECF Nos. 32, 37, 38 & 43.) Disputed facts are viewed in the light most favorable to Ramos, as the non-moving party.

Continental's hand assembly line where she performed a variety of tasks including hand assembly, hand soldering, and solder inspection. (ECF No. 43 at 5.) In November 2016, Ramos moved to the final functional test (FFT) area where she quality-tested the finished products. (*Id.* at 6; ECF No. 34-1 at 5.)

Prior to 2006, Ramos was diagnosed with major depression and anxiety. (ECF No. 38 at 12.) In 2013 or 2014, she was diagnosed with Attention Deficit Hyperactivity Disorder (ADHD). (*Id.*) In 2015, Continental granted Ramos' request for time off under the Family and Medical Leave Act (FMLA) due to her depression. (*Id.* at 11-12.)

In early January 2018, Ramos asked to be moved off the FFT line because she was going through a change in her medication. (ECF No. 43 at 8-9.) On January 16, Ramos again took FMLA leave, anticipating a return to work on February 6. (*Id.* at 10.) On February 2, just days before her expected return, Continental denied Ramos' request to switch off the FFT line. (*Id.* at 11.) As a result, Ramos did not return to work. (ECF No. 38 at 24.)

On February 14, Dr. Candice Peterson, Ramos' health care provider, completed a "Medical Questionnaire" that identified the nature of Ramos' condition and proposed restrictions based on this condition. (ECF No. 34-23 at 2-5.) According to Dr. Peterson, Ramos' condition permanently, substantially limited her ability to concentrate. (*Id.* at 3.) Additionally, when asked to describe proposed restrictions, Dr. Peterson wrote: "the speed of line work and the need to pay attention for multiple tasks at once—she will likely encounter difficulties due to diagnosis." (*Id.* at 4.) Ramos then requested an ADA accommodation transfer to a line other than FFT. (ECF No. 38 at 25.) On February 21, Continental denied Ramos' accommodation request, stating that there were no vacancies. (ECF No. 43 at 14.) While still out on FMLA leave, Ramos requested an update on the status of her accommodation request at least five times from March 12 to April 3. (*Id.* at 15-16.)

Ramos' 12 weeks of FMLA leave ran out on April 9. (ECF No. 38 at 31.) At the end of her FMLA leave, Continental offered Ramos the opportunity to extend her leave up to 12 months total, pursuant to Continental's Medical Leave of Absence (MLOA) policy. (*Id.* at 32-33.) The MLOA policy required Ramos to continue to qualify for short-term disability, long-term disability, and/or workers' compensation benefits. (*Id.*) Ramos understood that if she failed to qualify for the enumerated benefits, she could be administratively terminated. (*Id.* at 33.) MetLife initially approved Ramos for short-term disability from January 12, 2018 to April 20, 2018. (*Id.*) MetLife

terminated Ramos' short-term disability benefits on May 14 because it determined the medical documentation provided did not support a continued functional impairment. (*Id.* at 33-34.) Around May 23, Ramos appealed the termination of her short-term benefits. (*Id.* at 34.) On July 10, MetLife denied Ramos' appeal. (*Id.*) Continental then administratively terminated Ramos on September 7. (*Id.* at 35.)

## SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate where the admissible evidence reveals no genuine issue of any material fact." *Sweatt v. Union Pac. R. Co.*, 796 F.3d 701, 707 (7th Cir. 2015) (citing Fed. R. Civ. P. 56(c)). Material facts are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of "material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If the parties assert different views of the facts, the Court must view the record in the light most favorable to the nonmoving party. *E.E.O.C. v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000). But it is not enough to merely assert a difference of opinion. *See Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 548 (7th Cir. 2011) ("'If the subjective beliefs of plaintiffs in employment discrimination cases could, by themselves, create genuine issues of material fact, then virtually all defense motions for summary judgment in such cases would be doomed.'") (quoting *Mlynczak v. Bodman*, 442 F.3d 1050, 1058 (7th Cir. 2006)).

## ANALYSIS

Ramos' complaint states four claims. (ECF No. 1 at 8-9.) The first three—failure to accommodate, discriminatory discharge, and retaliatory discharge—arise under the Americans with Disabilities Act of 1990, as amended by the Civil Rights Act of 1991 and the ADA Amendments Act of 2008. (*Id.*) The fourth claim alleges retaliatory discharge in violation of the Family and Medical Leave Act of 1993. (*Id.* at 9.) Because Ramos has not come forward with evidence sufficient for a jury to find that she is a qualified individual under the ADA, her three ADA claims will be dismissed. Because Ramos cannot show FMLA retaliation under either the direct or indirect methods, her FMLA claim will also be dismissed.

I.  **Because She is Not a "Qualified Individual," Ramos Cannot Survive Summary Judgment on Claims I, II, and III.**

Whether the claim is failure to accommodate, discriminatory discharge, or retaliatory discharge, the ADA only protects "qualified individuals" with a disability. *Hammel v. Eau Galle*

*Cheese Factory*, 407 F.3d 852, 862 (7th Cir. 2005). To determine whether an employee is a qualified individual, courts consider whether the employee "(1) satisfies the employer's legitimate selection criterion for the job; and (2) is capable of performing the job's 'essential functions' with or without reasonable accommodation from an employer." *Id.* Because Ramos cannot satisfy the second element of this inquiry, all three of her ADA claims fail.

> A. **The Essential Functions of a Production Associate Include the Ability to Multitask and Concentrate.**

"When defining a job's essential functions, 'consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description . . . for the job, this description shall be considered evidence of the essential functions of the job.'" *Bilinsky v. Am. Airlines, Inc.*, 928 F.3d 565, 569 (7th Cir. 2019) (citing 42 U.S.C. § 12111(8)). "Although [courts] look to see if the employer actually requires all employees in a particular position to perform the allegedly essential functions, . . . [courts] do not otherwise second-guess the employer's judgment in describing the essential requirements for the job." *DePaoli v. Abbott Lab'ys*, 140 F.3d 668, 674 (7th Cir. 1998) (citations omitted). The presumption is that "an employer's understanding of the functions of the job is correct, unless the plaintiff offers sufficient evidence to the contrary." *Gratzl v. Off. of Chief Judges of 12th, 18th, 19th, & 22nd Jud. Cirs.*, 601 F.3d 674, 679 (7th Cir. 2010).

Here, the parties do not dispute that multitasking and concentration are essential functions of a production associate's job. (ECF No. 43 at 6.) Ramos acknowledged that no matter what line she worked on, she was required to multitask. (ECF No. 34-1 at 11-12.) And when asked if she would have been able to complete her job as a production associate without the ability to multitask and concentrate, Ramos replied, "No." (*Id.* at 12-13.) Nevertheless, she contends that some workstations involved more multitasking than others. (*See* ECF No. 43 at 6.) This is immaterial. *See Basith v. Cook Cty.*, 241 F.3d 919, 928 (7th Cir. 2001) (finding that even where a duty took only 45 minutes of an eight-hour shift, that duty was essential). To upset the presumption in favor of the employer's understanding of essential functions requires much more than a subjective quibble over degrees of unquantifiable metrics like duration of concentration. *See id.* ("The plaintiff must offer sufficient evidence to show the employer's understanding of the essential functions of the job is *incorrect*[.]") (emphasis added). Much like the plaintiff in *Basith*, rather than contradicting her employer's position, Ramos' evidence bolsters it. She admits that

multitasking and concentration were essential functions of her job as a production associate. The Court agrees.

### B. Ramos Could Not Perform the Essential Functions of a Production Associate.

Ramos "'bears the burden of establishing that she could perform the essential functions of the position with or without reasonable accommodation.'" *Tonyan v. Dunham's Athleisure Corp.*, 966 F.3d 681, 689 (7th Cir. 2020) (quoting *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 534 (7th Cir. 2013)). She "has not met this burden if the only accommodation she has ever suggested is not reasonable." *Gratzl*, 601 F.3d at 680. Under the ADA, "an employer is not required to create a new position or strip a current job of its essential functions" to accommodate an employee. *Id.* And while an employer may be obligated to reassign a disabled employee, this is only true when the employee is qualified for a vacant position. *See Gile v. United Airlines, Inc.*, 95 F.3d 492, 499 (7th Cir. 1996). But to simply "'have another employee perform a position's essential function, and to a certain extent perform the job for the employee, is not a reasonable accommodation.'" *Stern v. St. Anthony's Health Ctr.*, 788 F.3d 276, 289 (7th Cir. 2015) (quoting *Majors*, 714 F.3d at 534)).

In this case, as of February 14, 2018, Ramos could not perform the essential functions of her job as a production associate. According to Dr. Peterson, Ramos' depression, anxiety, and ADHD permanently, substantially impaired her ability to concentrate and multitask. (ECF No. 34-23 at 4.) And Dr. Peterson recommended restricting Ramos' "need to pay attention for multiple tasks at once." (*Id.*) Continental was entitled to rely on Dr. Peterson's assessment of Ramos' capabilities when deciding whether she could perform the essential functions of her job. *See Tonyan*, 966 F.3d at 689-90 (citing *Koshinski v. Decatur Foundry, Inc.*, 177 F.3d 599, 603 (7th Cir. 1999)). It is undisputed that production associates must be able to concentrate and multitask regardless of specific assignment. Continental was not required to strip the position of these essential functions in order to accommodate Ramos. *See Gratzl*, 601 F.3d at 680.

Whether Ramos herself believed she could succeed in other assembly line roles at Continental is irrelevant. While "the ADA is not a paternalistic statute designed to protect a disabled person from [her]self," where the record firmly establishes an employee's inability to perform the essential functions of her job, the employee's self-assessment of her functional capacity or overwhelming desire to work cannot form the basis for employer liability. *Koshinski*,

177 F.3d at 603. Put simply, if the objective medical evidence cuts one way, and the employee's opinion the other, the ADA does not punish the employer for following the former.

But Ramos argues that Dr. Peterson's note was more nuanced than Continental suggests. Indeed, Dr. Peterson wrote that the only duty Ramos could not perform with or without reasonable accommodation was "the multitasking *required on the FFT line*." (ECF No. 34-23 at 5 (emphasis added).) The problem with this is that the medical questionnaire asked whether the employee could "perform, with or without a reasonable accommodation, the tasks/duties *identified in the attached job description*." (*Id.* at 4 (emphasis added).) The production associate job description does not list distinct essential functions for the different assembly lines. (*See* ECF No. 34-10 at 2-5.) Rather, the job description contemplates the *same* essential functions for each area. (*Id.*) There is no basis in the record to support the conclusion that Ramos was only unable to perform the multitasking required in the FFT area. It appears that Dr. Peterson simply accepted Ramos' opinion that the FFT area involved the most intense multitasking. This subjective belief does not create a triable issue of fact at summary judgment. *See Yancick*, 653 F.3d at 548.

Dr. Peterson determined that accommodating Ramos required restricting the need to concentrate on multiple tasks at once. Every formulation of the production associate position requires an employee to concentrate and multitask. Continental was not obligated to alter these fundamental essential functions to accommodate Ramos. Accordingly, Ramos was not a qualified individual under the ADA, and her failure to accommodate, discriminatory discharge, and retaliatory discharge claims must fail.

## II. Ramos Has Not Provided Evidence Necessary to Support Her FMLA Retaliation Claim.

A plaintiff can show FMLA retaliation via the direct or indirect method of proof. *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 220 (7th Cir. 2015) (citations omitted). To establish a prima facie case of retaliatory discharge under the direct method, the plaintiff must establish that: "(1) [s]he engaged in a protected activity; (2) [the employer] took adverse employment action against h[er]; and (3) there is a causal connection between [the] protected activity and [the employer's] adverse employment action." *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 633 (7th Cir. 2009) (citing *Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 850 (7th Cir. 2008)). The indirect method requires the employee to show that "(1) she is a member of a protected class; (2) she was performing her job to [her employer's] expectations; (3) she suffered an adverse

employment action; and (4) she was treated less favorably than similarly situated employees outside of the protected class." *Warren v. Solo Cup Co.*, 516 F.3d 627, 630 (7th Cir. 2008) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). Ramos cannot satisfy the causal element of the direct method, and she has not identified any similarly situated employees. Thus, her FMLA retaliation claim fails under either option.

      A.      **Ramos Cannot Prove a Causal Connection Between Her Protected Activity and Termination Under the Direct Method.**

Continental concedes that Ramos' FMLA leave was protected activity, and it does not dispute that she suffered an adverse employment action when she was administratively terminated. *See* ECF No. 31 at 17-19. But it does contest causation. *Id.* It notes that "temporal proximity between an employee's protected activity and an adverse employment action is rarely sufficient to show that the former caused the latter." *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 635 (7th Cir. 2011). And the temporal proximity in this case is not particularly close. Ramos first took FMLA leave in August 2015. She took it again in January 2018, it ran out in April, and she was not terminated until September. In between, she was approved for MLOA leave at Continental's discretion. (ECF No. 38 at 32-33.)

Ramos offers no evidence from which a reasonable jury could find that Continental terminated her because she exercised her FMLA rights. The best she can do is show that her termination occurred after she took leave. But this timing does not suggest, let alone begin to prove, causation. It is unlikely that an employer, desperate to retaliate against the employee for her protected activity, would approve her request for an additional 12 months of leave—subject to the MLOA policy conditions—instead of simply terminating her when her FMLA leave expired. Indeed, "[t]he inference of causation weakens as the time between the protected expression and the adverse action increases, and then 'additional proof of a causal nexus is necessary.'" *Oest v. Ill. Dept. of Corrections*, 240 F.3d 605, 616 (7th Cir. 2001) (quoting *Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 511 (7th Cir. 1998), *overruled on other grounds by Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016)).

In response, Ramos appears to argue that Continental's proffered explanation—that she was terminated because she no longer qualified for MLOA leave—is mere pretext. Her theory is that Continental *forced* her to remain out of work when it denied her accommodation request. (ECF No. 36 at 22-24.) This caused her to exhaust her FMLA leave, which caused her to rely on the MLOA leave policy, which she no longer qualified for after MetLife denied her benefits appeal,

which, at last, gave Continental an apparently non-discriminatory excuse to terminate her. This unwieldy causal chain ignores the obvious: Ramos was not entitled to an accommodation. Continental was ready to welcome her back on February 7, 2018, but she decided she could not return without her requested accommodation. It is unclear how an employer's decision to deny an unwarranted accommodation constitutes retaliatory conduct. It is equally unclear how such a decision can be characterized as forcing the employee out of work.

Ramos also suggests that, despite the gap between her FMLA leave and termination, the timing of her termination was suspicious because it occurred two months after MetLife denied her appeal but only one day after the EEOC issued her a Notice of Right to Sue letter. *Id.* at 21. To the first point, MetLife is a third-party disability benefits vendor. (ECF No. 44 at 14.) Because Continental had no reasonable ability to know the status of Ramos' relationship with such a vendor, the MLOA policy required Ramos to periodically update Continental. (*Id.* at 13-14.) Had she promptly done so, she may have been terminated by July 11. (*Id.* at 14.) That she held the dispositive information in confidence for an extended period cannot be the basis for inferring suspicious behavior on the part of her employer. Ramos' second argument fares no better. In fact, the Supreme Court has already rejected it. *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001). In *Breeden*, the Court concluded that the employee had failed to make a prima facie case of retaliation because there was "no indication that [the employer] even knew about the right-to-sue letter" before taking the adverse employment action. *Id.* at 273. And, alternatively, "if one presumes [the employer] knew about it, one must also presume that [the employer] . . . knew . . . about the protected action (filing of the EEOC complaint) that the letter supposedly disclosed." *Id.* Because the EEOC complaint was filed months earlier, the Court held that the adverse employment action taken on the heels of the right-to-sue letter suggested no causality at all. *Id.* at 273-74. This case presents nearly identical circumstances. Ramos filed her EEOC complaint on April 30, 2018. (ECF No. 38 at 36.) That action, not the EEOC's issuance of a right-to-sue letter, was the relevant protected activity. *See Breeden*, 532 U.S. at 273 (noting respondent's "utterly implausible suggestion that the *EEOC*'s issuance of a right-to-sue letter . . . is a protected activity of the employee" (emphasis in original)). And it is not sufficient evidence of causality.

### B. Ramos Has Failed to Identify a Similarly Situated Employee Under the Indirect Method.

For purposes of summary judgment, Continental argues only that Ramos failed to prove she was treated less favorably than similarly situated employees outside of her protected class. (ECF No. 31 at 19-20.) To be similarly situated for purposes of a retaliation claim, the comparator employee must be "comparable to the plaintiff in all *material* respects." *Crawford v. Indiana Harbor Belt R. Co.*, 461 F.3d 844, 846 (7th Cir. 2006) (emphasis in original) (citations omitted). Here, Ramos never identified a similarly situated employee whatsoever. (*See* ECF No. 36 at 22-24.) As a result, she cannot meet her burden to establish a prima facie case of retaliation. *See Warren*, 516 F.3d at 630-31.

### CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant's motion for summary judgment under Fed. R. Civ. P. 56 (ECF No. 30) is **GRANTED**, and the case is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin on December 10, 2021.

        s/ *Brett H. Ludwig*
        BRETT H. LUDWIG
        United States District Judge